UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN ADAMS, | Case No. CV 05-6617-JTL |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On September 12, 2005, Marilyn Adams ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability benefits. On October 28, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 8, 2006, defendant filed an Answer to Complaint. On June 1, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On January 14, 2000, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 302-05). Plaintiff had previously filed an application for supplemental security income on May 9, 1996, which was denied initially, upon reconsideration, and at the hearing level. Plaintiff did not appeal. (AR at 250). In her current application, plaintiff claimed that, beginning on January 1, 1990, the following ailments prevented her from working: bipolar disorder, panic disorder, and depression. (AR at 311). The Commissioner denied plaintiff's application for benefits. (AR at 241-45, 262-65). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 266).

On April 12, 2001, the ALJ conducted a hearing in Long Beach, California. (AR at 439-48). Plaintiff appeared at the hearing with counsel and testified. (AR at 442-47). On May 16, 2001, the ALJ issued his decision denying benefits. (AR at 249-53). In his decision, the ALJ concluded that plaintiff did not suffer from any severe physical or mental impairments or combination of impairments. (AR at 252). As such, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On June 5, 2001, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 271). On September 28, 2001, the Appeals Council issued an order remanding the case to the ALJ ("Remand Order"). (AR at 273-74). In the Remand Order, the Appeals Council remanded the case on the ground that the record was unclear regarding the nature and severity of plaintiff's mental impairment. (AR at 273). On remand, the Appeals Council instructed the ALJ to obtain additional evidence concerning

1  plaintiff's mental impairment and, if warranted, obtain evidence from
2  a vocational expert to clarify the effect of the assessed limitations
3  on her occupational base.  (AR at 273-74).
4      On December 2, 2002, the ALJ conducted a hearing in Long Beach,
5  California.  (AR at 449-68).  Plaintiff appeared at the hearing with
6  counsel and testified.  (AR at 458-67).  William J. Cable, M.D., a
7  medical expert, also appeared and testified.  (AR at 452-58).  David
8  A. Rinehart, a vocational expert, was present, but did not testify.
9  (AR at 449, 467).
10     On May 16, 2001, the ALJ issued his decision denying benefits.
11 (AR at 21-27).  In his decision, the ALJ again concluded that
12 plaintiff did not suffer from any severe physical or mental
13 impairments or combination of impairments. (AR at 26).  As such, the
14 ALJ found that plaintiff was not disabled pursuant to the Social
15 Security Act.  (Id.).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1.  The ALJ failed to properly assess the severity of plaintiff's mental impairment.

2.  The ALJ failed to properly assess plaintiff's subjective symptoms and credibility.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence

3

means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Id. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits her physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Id. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be

disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. <u>Bowen</u>, 482 U.S. at 141. If the claimant cannot perform her past work, the fifth and final step determines whether she is able to perform other work in the national economy in light of her age, education and work experience. <u>Id.</u> at 142. The claimant is entitled to disability benefits only if she is not able to perform such work. <u>Id.</u>

**B.   <u>Plaintiff's Mental Impairments</u>**

Plaintiff claims that the ALJ erred in finding that plaintiff's mental impairments did not constitute a severe impairment. According to plaintiff, the ALJ failed to consider the evidence in the record with regard to the severity of her limitations, particularly the assessments of plaintiff's treating and examining physicians. (Joint Stipulation at 4). Plaintiff contends that the ALJ's failure to set forth specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician in favor of a medical expert constitutes error. (Joint Stipulation at 5).

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the

evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306).  The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

Here, the ALJ found that plaintiff's mental impairments did not constitute a severe impairment.  Specifically, the ALJ noted that plaintiff's mental impairments resulted in "none-to slight limitations in daily living, slight-to-moderate difficulties in maintaining social functioning, no difficulties in concentration, persistence or pace and no episodes of decompensation."  (AR at 25).  The ALJ also noted that marked limitations imposed by the consultative examiners were inconsistent with the objective findings, there was no evidence of any cognitive deficits, and plaintiff showed a significant increase in independence by September of 2002.  (AR at 25).  The ALJ also rejected plaintiff's credibility on the ground that her "self-reported inability to function is out of proportion with her demonstrated capacity."  (AR at 26).

Plaintiff's treating psychiatrist, Gus Dixon, M.D., diagnosed her with bipolar depression, psychosis, anxiety disorder, and panic disorder.  (AR at 220, 221, 222, 223, 225, 227, 229, 428, 431).  Dr. Dixon has also prescribed medications to treat her mental impairments, such as Risperdal,[1] Imipramine,[2] Perphenazine,[3] Lorazepam,[4] Serzone,[5]

---

[1] Risperdal "is used to treat certain mental/mood disorders (schizophrenia, manic phase of bipolar disorder). This medication can help you to think clearly and function in daily life." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Risperdal"; follow "Risperdal
(continued...)

6

and Wellbutrin.[6] (AR at 220, 221, 222, 223, 225, 227, 428). Furthermore, Nathan Lavid, M.D., performed a Complete Psychiatric Evaluation of plaintiff on September 4, 2002. (AR at 420-23). In the evaluation, Dr. Lavid diagnosed plaintiff with depressive disorder not otherwise specified and moderate psychosocial/environmental stressors. (AR at 422). Dr. Lavid also assessed plaintiff with a Global Assessment of Functioning[7] ("GAF") score of 60,[8] with a fair

---

[1](...continued)
Oral" hyperlink; then follow "Uses").

[2] Imipramine "is used to treat depression." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Imipramine"; follow "Imipramine HCl Oral" hyperlink; then follow "Uses").

[3] Perphenazine "is used to treat mental/emotional conditions." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Perphenazine"; follow "Phenothiazines Oral" hyperlink; then follow "Uses").

[4] Lorazepam "is used to treat anxiety." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Lorazepam"; follow "Lorazepam Oral" hyperlink; then follow "Uses").

[5] Serzone "is used to treat depression." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Serzone"; follow "Uses").

[6] Wellbutrin is a brand name of the medication Bupropion. "Bupropion is used to treat depression. It can improve your mood and feelings of well-being." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Wellbutrin"; follow "Wellbutrin Oral" hyperlink; then follow "Uses").

[7] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[8] A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or
(continued...)

prognosis. (AR at 422, 423). Overall, Dr. Lavid found "no evidence of cognitive defects, perceptual disturbances or delusional disorders at this time." (AR at 423). Similarly, in a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form, Dr. Navid found no restrictions or only slight restrictions in plaintiff's ability to do work-related activities. (AR at 424-25).

Two examining psychologists also evaluated plaintiff. On April 25, 2002, Earl W. Rugraff, Ph.D., completed a Psychological Evaluation Report based on his examination of plaintiff. (AR at 414-19). In the report, Dr. Rugraff diagnosed plaintiff with bipolar disorder, mixed episode, severe with psychotic features; generalized anxiety disorder; schizoid personality disorder with paranoid personality features; and negativistic personality features. (AR at 419). Additionally, Dr. Rugraff assessed plaintiff with a GAF score of 40.[9] (Id.). Notably, Dr. Rugraff wrote, "[Plaintiff] is not able to keep her life structured and function enough to hold down a steady job. There is no reason to believe this condition will change and that [plaintiff] will become self-sufficient in the forseeable future." (AR at 419). On May 3, 2002, Roderick S. Hall, Ph.D., completed a Psychological Consultation of plaintiff. (AR at 403-09). Dr. Hall diagnosed

---

[8](...continued)
co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[9] A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

plaintiff with low average range of intellectual functioning, deficient range of functioning with respect to her memory, memory disorder NOS, and major depression. (AR at 408). Dr. Hall noted marked limitations in plaintiff's ability to sustain an ordinary routine without sustained supervision, to complete complex tasks, to concentrate for at least two-hour increments at a time in order to maintain a regular work schedule, and to handle funds. (AR at 409). Dr. Hall also noted moderate limitations in her ability to complete detailed tasks. (Id.). Furthermore, Dr. Hall completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form with respect to plaintiff. (AR at 412-13). In the statement, he noted marked restriction in her ability to understand and remember short, simple instructions; carry out short, simple instructions; and make judgments on simple work-related decisions. (Id.). Dr. Hall also assessed extreme restrictions on her ability to understand and remember detailed instructions and carry out detailed instructions. (AR at 412). Additionally, Dr. Hall noted moderate restrictions in ability to interact appropriately with the public, supervisors and co-workers; marked restrictions in her ability to respond appropriately to work pressures in a usual work setting; and extreme restrictions in her ability to respond appropriately to changes in a routine work setting. (AR at 413).

Defendant and the ALJ contend that Dr. Cable, the medical expert, testified that plaintiff was capable of work. Dr. Cable opined that plaintiff suffered from depressive disorder, but that such mental impairment did not meet or equal a listed impairment. (AR at 452). Additionally, Dr. Cable testified that the depressive disorder posed no work restrictions on plaintiff. (AR at 452-53). The ALJ adopted

the opinion of Dr. Cable because he was the only physician to evaluate the entire medical record. (AR at 25-26). The ALJ also specifically rejected the opinions of Drs. Hall and Rugraff as inconsistent with the objective findings. (AR at 25). Specifically, they noted that the marked limitations imposed by the physicians were inconsistent with plaintiff's stated capacity, namely her ability to care for her personal hygiene, go shopping, do laundry, utilize public transportation independently, and handle her own funds. (Id.). The ALJ also rejected Dr. Lavid's assessment of moderate stressors, as the assessment was based solely on her I.Q. score and contradicted by plaintiff's ability to live independently. (Id.).

Notwithstanding the opinion of Dr. Cable that plaintiff could work and the ALJ's determination that the impairments did not limit her ability to function, plaintiff's treating psychiatrist consistently diagnosed her with some combination of bipolar depression, psychosis, anxiety disorder, and panic disorder and prescribed her various medications to treat the mental impairments. (AR at 220, 221, 222, 223, 225, 227, 229, 428, 431). Additionally, three consultative examiners – two psychologists and one psychiatrist – diagnosed plaintiff with moderate to severe mental impairments. (AR at 409, 419, 422). The Court is not persuaded that Dr. Cable's opportunity to review all of plaintiff's medical records constitutes sufficient grounds to give his opinion more weight than the three examining physicians. The Court is also not persuaded by the ALJ's rejection of the opinions of Drs. Hall, Rugraff, and Navid on the

10

basis that she can perform certain daily activities independently.[10] Plaintiff's ability to shop, launder her clothes, utilize public transportation, and other chores does not necessarily contradict the physicians' assessments that she may be moderately to severely restricted in terms of work-related activities. Most significantly, the fact that all three physicians who examined plaintiff's mental impairment uniformly agree that she suffers from mental impairments that more than minimally affect her ability to work is sufficient to meet the de minimus standard that must be applied to the Step Two severity inquiry. See Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.

**B.     Reversal and Remand is Appropriate**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Id; see also Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where

---

[10] "With respect to daily activities, this court has held that if a claimant 'is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (citing Morgan, 169 F.3d at 600); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In Fair, however, the Ninth Circuit cautioned that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair, 885 F.2d at 603.

11

no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must determine whether the severe impairments meet or equal a listed impairment. At the step two inquiry, the ALJ must consider the combined effect of all plaintiff's impairments on plaintiff's ability to function, without regard to whether each alone was sufficiently severe. See Smolen, 80 F.3d at 1290. The ALJ must then determine whether the impairment prevents plaintiff from performing work she has performed in the past. If plaintiff cannot perform her past work, the ALJ must finally determine whether she is able to perform other work in the national economy in light of her age, education, and work experience.[11]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner

---

[11] In the Joint Stipulation, plaintiff also argues that the ALJ erred in failing to properly assess plaintiff's subjective symptoms and credibility. As explained above, however, the ALJ's failure to find that plaintiff suffers from a severe mental impairment constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

1  of Social Security Administration and REMANDS this action for further
2  administrative proceedings consistent with this Memorandum Opinion and
3  Order.

DATED: July 31, 2006

_____/s/_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE